IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**BMO HARRIS BANK N.A.,**

    **Plaintiff,**

    v.

**ROBERT SMITH,**

    **Defendant.**

Case No. 16-2815-CM

## MEMORANDUM AND ORDER

Defendant Robert Smith was president of All Freight Systems, Inc. ("All Freight"), until it ceased to exist after bankruptcy proceedings. Before filing for bankruptcy, All Freight entered into multiple loan agreements with GE Capital in which GE Capital financed All Freight's purchase of numerous business vehicles. GE Capital eventually assigned these agreements to other entities including plaintiff, BMO Harris Bank N.A. All Freight defaulted on the agreements and plaintiff now seeks to recover the remaining balance from defendant as the personal guarantor of the loans. The matter is now before the court on plaintiff's Motion for Summary Judgment (Doc. 32) and defendant's Motion for Summary Judgment (Doc. 29). For the reasons set forth below, the court grants plaintiff's motion and denies defendant's motion.

**I.**     **Background**

Between October 21, 2011 and June 3, 2013, All Freight entered into nine separate Loan and Security Agreements with GE Capital for the purchase of International Tractors for use in All Freight's business. The details of the agreements are set forth below:

- October 21, 2011 – $506,765.40 for the purchase of four 2011 International Tractors (the "First Agreement"),
- February 7, 2012 - $619,630.80 for the purchase of five 2013 International Tractors (the "Second Agreement"),

- February 13, 2012 - $495,726.60 for the purchase of four 2013 International Tractors (the "Third Agreement"),
- March 6, 2012 - $618,123.00 for the purchase of five 2013 International Tractors (the "Fourth Agreement"),
- March 12, 2012 - $620,459.40 for the purchase of five 2013 International Tractors (the "Fifth Agreement").
- March 20, 2012 - $619,124.40 for the purchase of five 2013 International Tractors (the "Sixth Agreement)
- March 29, 2012 - $515,665.20 for the purchase of four 2013 International Tractors (the "Seventh Agreement"),
- April 4, 2012 - $694,662.60 for the purchase of five 2013 International Tractors (the "Eighth Agreement"),
- June 3, 2013 - $141,648.96 for the purchase of two 2011 International Tractors (the "June 3rd Agreement").

The First through Eighth Agreements are known collectively as the "Agreements." In all of the listed agreements, GE Capital was granted a senior security interest in the equipment described (the "collateral").

Upon entering into the June 3rd Agreement, defendant also signed a Continuing Guaranty (the "Guaranty") in which he guaranteed All Freight's "present and future liabilities, obligations and indebtedness to GE Capital." On October 5, 2015, GE Capital notified All Freight that it had assigned the June 3rd Agreement to Ever Bank. This assignment included "all right, title, interest and obligations (arising from and after the date of the assignment) of GE in and to the Assigned Account, the equipment and collateral described in the Assigned Account, any Guaranty (to the extent any such Guaranty relates to the Assigned Account and the transaction contemplated thereby) and any related documents." (Doc. 34-2, at 13.)

By December 1, 2015, GE Capital had effectively transferred and assigned the remainder of its accounts associated with All Freight to plaintiff. Plaintiff claims this includes all of the rights, titles, and interests to the accounts associated with All Freight including the equipment and collateral described in the Agreements and defendant's Guaranty. Defendant, however, controverts the fact that GE Capital possessed the Guaranty on December 1, 2015 to be able to assign it to plaintiff.

Both parties do agree, however, that the failure to make a payment is considered a default, and that upon default the lender may demand immediate possession of the collateral. There is no dispute that All Freight was in default due to missed payments on all of the Agreements. And there is no dispute that prior to the filing of this lawsuit, plaintiff recovered possession of the collateral and notified defendant of its intent to sell the collateral. Plaintiff provided defendant with the opportunity to redeem the collateral, which defendant did not do.

Pursuant to its usual practices, plaintiff evaluated the collateral to determine the best means to mitigate its damages, and determined it was best to sell or otherwise dispose of the collateral to maximize resale value, and to not repair or upgrade the collateral prior to the resale. The collateral from the First and Seventh Agreement were sold by public auction and the collateral from the Second, Third, Fourth, Fifth, Sixth, and Eighth Agreements were sold in a private sale. Plaintiff collected $569,500 in the private sale. The rest of the collateral was placed in public auction with Ritchie Bros. Auctioneers and, after commissions and fees, plaintiff collected $81,303.85. The total amount received from the private and public sales is controverted.

Plaintiff elected to accelerate the balance due under the defaulted Agreements and claims there is $1,580,518.98 remaining due under the Agreements. Defendant controverts the amount owed and due. Plaintiff claims that under the Guaranty, defendant is obligated to pay any remaining amounts due. After deducting the amount from the sale of the collateral and adding in interest, sale expenses, and late fees, plaintiff claims defendant owes under the Guaranty, a total of $1,431,356.69.

**II.     Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party demonstrates an absence of evidence in support of an element of the case, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. The nonmoving party "may not rest upon the mere allegations or denials of his pleading." *Id.*

In making the summary judgment determination, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 252.

**III.    Analysis**

Both parties have filed motions for summary judgment arguing there are no disputed facts and, therefore, judgment should be entered in their favor.

Plaintiff claims that it is entitled to summary judgment because it is undisputed that All Freight is in default and therefore defendant is liable to pay the amount due pursuant to the Guaranty. Defendant, however, insists that the June 3rd Agreement and Guaranty were assigned to Ever Bank, and therefore plaintiff does not hold the Guaranty and does not have standing to recover. Defendant therefore asks the court to grant summary judgment in his favor.

In response to plaintiff's motion for summary judgment, defendant also raises issues as to whether the sale of the collateral was commercially reasonable, claiming plaintiff failed to comply with state laws governing the sale of collateral specifically with regard to calculating the deficiency balance.

Defendant argues that because of these violations of state law, there are material issues of fact as to the total amount due.

### a. Defendant's Motion for Summary Judgment

Addressing first defendant's summary judgment motion, the court must determine what obligations were created under the Guaranty and what parties currently hold those rights.

The parties agree that Kansas law governs the interpretation of the Guaranty. Kansas law defines a guaranty as "a contract between two or more persons, founded upon consideration, by which one person promises to answer to another for the debt, default, or miscarriage of a third person, and, in a legal sense, has relation to some other contract or obligation with reference to which it is a collateral undertaking." *Overland Park Sav. & Loan Ass'n v. Miller*, 763 P.2d 1092, 1097 (Kan. 1988). A guaranty is to be construed "as are other contracts, according to the intention of the parties as determined by a reasonable interpretation of the language used in the light of the attendant circumstances." *Id.* at 1097–98. The guarantor's contract is a separate contract and not "an engagement jointly with the principal to do the act." *Gen. Elec. Capital Corp. v. Dodson Aviation, Inc.*, 286 F. Supp. 2d 1307, 1314 (D. Kan. 2003).

A written contract may be interpreted as a matter of law by the court. *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 298 P.3d 250, 265 (Kan. 2013). If the language of a contract is ambiguous and the intent of the parties cannot be ascertained, summary judgment is not appropriate. *Id.* Whether a contract is ambiguous is a question of law. *Id.*

Defendant's argument in support of his motion for summary judgment is that because the June 3rd Agreement and Guaranty were transferred to Ever Bank, plaintiff does not hold the Guaranty and cannot recover. Defendant does not dispute that the Guaranty he signed on June 3, 2013 guaranteed obligations under multiple loan agreements and that a single guaranty can cover multiple principal obligations. He conceded that, "[t]he Guaranty is dated June 3, 2013. It guarantees all of the Borrower's

-5-

debt to GECC . . . [and] applies to GECC's 'successors, endorsees and assigns.'" (Doc. 30, at 10.) Defendant, however, maintains that when GE Capital assigned the June 3rd Agreement to Ever Bank, it also assigned the entire Guaranty, and Ever Bank now holds all of the obligations created in the Guaranty signed on June 3, 2013.

In the Notice of Assignment for the June 3rd Agreement, GE Capital notified All Freight that it assigned to Ever Bank:

> "all right, title, interest and obligations (arising from and after the date of the assignment) of GE in and to the Assigned Account, the equipment and collateral described in the Assigned Account, any Guaranty *(to the extent any such Guaranty relates to the Assigned Account and the transaction contemplated thereby)* and any related documents."

(Doc. 34-2, at 13) (Emphasis added). The plain language of this notice establishes that GE Capital assigned the June 3rd Account and any guaranty specific to that account to Ever Bank. The notice does not say that the entire Guaranty signed on June 3, 2013, including all of the obligations on all of the loan agreements, was transferred to Ever Bank. And in the Transfer Acknowledgement between GE Capital and plaintiff, GE Capital acknowledged the transfer of:

> "all documents, loans, leases, security agreements, or other instruments, together with any promissory notes, *guaranties*, property rights, other instruments related thereto, and other writings in any way relating to the Transferred Accounts (the 'Financing Documents'), all property and property rights owned by Transferor in connection with its interests in the Transferred Accounts, and any property and property rights held by Transferor as collateral solely for either or both of the payment and performance of certain obligations under the Financing Documents."

(Doc. 34-2, at 10) (Emphasis added). Based on this acknowledgement, it is evident that all of the guaranties related to these accounts were transferred to plaintiff.

Defendant has provided no evidence that GE Capital intended to or did in fact transfer the entire Guaranty—including all of the obligations on all of the loan agreements—to Ever Bank when it transferred the June 3rd Agreement. The Notice of Assignment indicates only the guaranty for the June 3rd Agreement was transferred to Ever Bank. And GE Capital transferred the first eight Agreements to

plaintiff along with the guaranties. Because defendant does not dispute that the Guaranty signed on June 3, 2013 created multiple obligations on all of All Freight's debt, and because defendant has not provided any evidence to affirmatively establish that the Guaranty was transferred in its entirety to Ever Bank, the court finds the evidence establishes that only the guaranty on the June 3rd Agreement was transferred to Ever Bank and the guaranties for the rest of the Agreements were subsequently transferred to plaintiff. Because plaintiff holds the guaranties for the Agreements at issue, plaintiff has standing to recover amounts owed by defendant. Defendant's motion for summary judgment is denied.

### b. *Plaintiff's Motion for Summary Judgment*

In its motion for summary judgment, plaintiff claims that it is entitled to summary judgment because it is undisputed that All Freight defaulted on its obligations and that defendant is liable for the amount owed under the Guaranty. Defendant responded arguing, again, that plaintiff does not hold the guaranties for the Agreements at issue, and that there are issues of material fact regarding the sale of the collateral and the total amount owed.

In regard to whether plaintiff held the guaranties at issue, plaintiff provided evidence that GE Capital transferred the June 3rd Agreement and the guaranty for the June 3rd Agreement to Ever Bank. There are also documents in the record that the first through eighth Agreements and the guaranties for those Agreements were transferred from GE Capital to plaintiff. Again, defendant has not provided any evidence to controvert the fact that plaintiff received the guaranties for the Agreements. There is no evidence in the record that all of the guaranties for all of the accounts were transferred to Ever Bank. The court finds that plaintiff is entitled to recover from defendant under the guaranties transferred to plaintiff from GE Capital.

Defendant also argues that there are issues of fact regarding whether the sale of the collateral was commercially reasonable, and that there is a dispute over the total amount due.

Defendant first argues plaintiff did not comply with state statutes that govern the sale of collateral. The parties agree that Utah law applies to the First Agreement and Texas law applies to the Second through Eighth Agreements. Defendant claims plaintiff did not comply with Utah law in connection with the sale of the collateral in the First Agreement. Under Utah law, after applying the sale proceeds to the total deficiency, the secured party is required to send a written explanation of the calculation of the surplus or remaining deficiency. Defendant claims he did not receive any calculation of the alleged deficiency as required by Utah Code Ann. § 70A-9a-616(3). Defendant also claims plaintiff failed to comply with a similar Texas law which requires the secured party to send a written explanation of the calculation of the surplus or deficiency. *See* Tex. Bus. & Com. Code Ann. § 9.616. These failures, according to defendant, create a dispute of fact as to the commercially reasonable aspects of the deficiency claim. The court finds, however, that both state statutes—which are based on the Uniform Commercial Code—cover only the sale of consumer goods. Because the collateral at issue was used in All Freight's business, this provision does not apply to the transactions at issue.

Defendant also argues that plaintiff's evidence that the sale was commercially reasonable is insufficient because it is not based on personal knowledge. Plaintiff submitted a declaration from Kevin Evers, a Litigation Specialist, who testified that plaintiff disposed of the collateral in conformity with reasonable commercial practices. Evers also determined that defendant owed $1,431,356.69 as of September 6, 2017. Defendant argues that the court should not rely on this declaration as evidence because it is not based on personal knowledge. Without the declaration, defendant maintains there are issues of material fact as to whether the sale of the collateral was commercially reasonable and how much defendant owes.

The court finds that the Evers declarations are sufficient to establish material facts, including the amount defendant owes and whether the sale was commercially reasonable. Evers declared that he, as

-8-

a Litigation Specialist for plaintiff, was authorized to make the declaration and that he made it of his own personal knowledge and "upon the business records of Plaintiff, which I certify are kept in the ordinary course of business and as a regular practice of Plaintiff." (Doc. 34, at 2.) Evers also declared that plaintiff's business records include the records of its predecessor-in-interest, GE Capital. The Tenth Circuit has held that an affiant's review of business records is sufficient to establish personal knowledge. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123 (10th Cir. 2005). And a declarant may rely on the business records of a predecessor-in-interest so long as they lay the proper foundation. *See Funderburke v. Midland Funding, L.L.C.*, No. 12-2221-JAR-DJW, 2013 WL 394198, at * 4 (D. Kan. Feb. 1, 2013). Defendant has offered no reason why Evers' declarations are unreliable or not based on personal knowledge.

Because Evers' declaration is reliable evidence, his explanation regarding the sale of the collateral and statement that the sale was done in a commercially reasonable manner is sufficient to establish the sale was conducted according to law.

Considering the information in Evers' declaration, the court can reasonably calculate the total amount due. Evers declared plaintiff received a total of $650,803.85 in proceeds from both the private and public sales of the collateral. In his declaration, Evers stated that plaintiff received $569,500 in the private sale and $81,303.85 in the public sale. He, however, incorrectly totaled the two amounts in his first declaration, and corrected the total in a subsequent declaration. (Doc. 44-1, at 2.) The court reviewed plaintiff's calculation, and without any contrary evidence, finds that plaintiff's damage calculation is not a contested fact. For these reasons, the court finds there are no material facts at issue and grants plaintiff's motion for summary judgment.

In light of this ruling, the court finds defendant's Motion to Prohibit Plaintiff From Presenting Evidence Of Any Alleged Personal Guaranty, Other Than The June 3, 2013 Personal Guaranty (Doc. 46) is moot. The court did not consider or rely on either of these documents in reaching its decision.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 29) is denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Summary Judgment (Doc. 32) is granted in the amount of $1,431,356.69.

**IT IS FURTHER ORDERED** that defendant's Motion to Prohibit Plaintiff From Presenting Evidence Of Any Alleged Personal Guaranty, Other Than The June 3, 2013 Personal Guaranty (Doc. 46) is denied as moot.

This case is closed. The clerk of the court is directed to enter judgment in favor of plaintiff and against defendant.

Dated September 28, 2018, at Kansas City, Kansas.

    s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**